FILED
CLERK U.S. DISTRICT COURT

APR  1 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

DARRYL LYNN DAVIS,                    ) CV 07-3861-VBF(SH)
                                      )
                    Petitioner,       ) ORDER ADOPTING THE
                                      ) REPORT AND RECOMMENDATION
        v.                            ) OF UNITED STATES MAGISTRATE
                                      ) JUDGE
TOM FELKER,                           )
                                      )
                    Respondent.       )
_____      )

Pursuant to 28 U.S.C. Section 636(b)(1)(C), the Court has reviewed the Petition, all of the records and files herein and the attached Report and Recommendation of the United States Magistrate Judge, and has made a de novo determination of the Report and Recommendation.  The Court concurs with and adopts the conclusions of the Magistrate Judge.

IT IS ORDERED that the Petition filed herein is dismissed with prejudice.

1       IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order,

2   the Magistrate Judge's  Report and Recommendation and the Judgment herein by

3   the United States mail on petitioner and counsel for respondent.

4       LET JUDGMENT BE ENTERED ACCORDINGLY.

5   DATED: _____4 - 1 - 08_____

6

7

8                                   VALERIE B. FAIRBANK

9                               UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLERK, U.S. DISTRICT COURT

FEB 2 9 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

1
2
3
4
5
6
7
8
9 **UNITED STATES DISTRICT COURT**
10 **CENTRAL DISTRICT OF CALIFORNIA**
11 **WESTERN DIVISION**
12
13
14
15 DARRYL LYNN DAVIS,              ) No. CV 07-3861-VBF (SH)
                                  )
16            Petitioner,         ) REPORT AND RECOMMENDATION OF
                                  ) UNITED STATES MAGISTRATE JUDGE
17      v.                        )
                                  )
18 TOM FELKER,                    )
                                  )
19            Respondent.         )
20 _____ )

21      This Report and Recommendation is submitted to the Honorable Valerie Baker

22 Fairbank, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order

23 05-07 of the United States District Court for the Central District of California.  For the

24 reasons stated below, the petition for a writ of habeas corpus should be denied.

25

26                              **I.  PROCEEDINGS**

27      Petitioner, a prisoner in the custody of the California Department of Corrections,

28 challenges his convictions in California Superior Court, Los Angeles County (Case No.

                                       1

1  TA071276).

2        On June 14, 2007, petitioner filed a Petition for Writ of Habeas Corpus by a

3  Person in State Custody ("Petition") herein.  On July 9, 2007, respondent filed an

4  Answer to the Petition.  On August 16, 2007, after submitting an amended habeas

5  petition, petitioner moved to amend the Petition.  (Per a Minute Order issued on August

6  21, 2007, the Court stated it assumed petitioner only wanted to pursue the claims alleged

7  in the submitted amended habeas petition.)  On October 5, 2007, respondent filed a

8  response, stating he did not oppose petitioner's motion to amend.  Per a Minute Order

9  issued on October 9, 2007, the Court ordered petitioner's First Amended Petition for

10  Writ of Habeas Corpus by a Person in State Custody ("First Amended Petition"),

11  accompanied by a supporting Memorandum of Points and Authorities ("Memorandum"),

12  filed as of July 30, 2007.  On October 24, 2007, respondent filed an Answer to the First

13  Amended Petition.  After receiving an extension of time, respondent filed a Return to the

14  First Amended Petition ("Return") on December 21, 2007.  After receiving extensions of

15  time, plaintiff filed a Traverse to the Return ("Traverse") on February 26, 2008.

16        Thus, this matter now is ready for decision.

## II.  **PROCEDURAL HISTORY**

19        On June 18, 2004, a Los Angeles County Superior Court jury found petitioner

20  guilty of one count of being a felon in possession of a firearm (Count 2).  (See Clerk's

21  Transcript ["CT"] 119-21; 3 Reporter's Transcript ["RT"] 933).[1]  However, since the

22  jury was deadlocked on two counts of attempted murder (Counts 4 and 5)[2], the trial court

23  declared a mistrial on those counts.  (See CT 120-21; 3 RT 928-31).  On September 15,

24  2004 (following a retrial), another jury found petitioner guilty of two counts of

---

26     [1]   Prior to trial, the prosecution moved for and was granted dismissal of two
27  counts of assault (Counts 1 and 3).  (See CT 62; 2 RT 15-16).

28     [2]   The victims in Counts 4 and 5 were Sheldon Terry and Faron Witherow,
respectively.  (See CT 191-92; 5 RT 1776-78).

1    attempted murder (Counts 4 and 5). In addition, the jury found true the special

2    allegations that the attempted murders were willful, deliberate, and premeditated; that in

3    the commission of the attempted murders, petitioner personally and intentionally

4    discharged a firearm, i.e., handgun, and petitioner personally used a firearm, i.e.,

5    handgun; and that in the commission of the attempted murder (Count 4), petitioner

6    personally and intentionally discharged a firearm which caused great bodily injury to the

7    victim. (See CT 191-95; 5 RT 1776-78). On September 29, 2004, after denying

8    petitioner's motion for a new trial, the trial court sentenced petitioner to state prison for

9    life plus 45 years 8 months to life. (See CT 211-17; 5 RT 1786, 1792-93).[3]

10        Petitioner appealed his convictions to the California Court of Appeal, wherein he

11   alleged inter alia the same claims as the claims alleged in the First Amended Petition

12   herein. (See Respondent's Notice of Lodging ["Lodgment"] Nos. 1 and 3). In an

13   unpublished Opinion issued on March 1, 2006, the California Court of Appeal reversed

14   the sentence imposed on Count 2, remanded the matter for resentencing on Count 2, and

15   affirmed the judgment in all other respects. (See Lodgment No. 4).[4]

16        Petitioner then filed a Petition for Review in the California Supreme Court,

17   alleging inter alia the same claims as the claims alleged in the First Amended Petition

18   herein. (See Lodgment No. 5). On June 14, 2006, the California Supreme Court denied

19   petitioner's Petition for Review "without prejudice to any relief to which [he] might be

20   entitled after the United States Supreme Court determines in Cunningham v. California,

21   No. 05-6551, the effect of Blakely v. Washington (2004) 542 U.S. 296 and United States

22   v. Booker (2005) 543 U.S. 220, on California law." (See Lodgment No. 6).

23

24        [3]    Petitioner's sentence consisted of the following: with respect to Count 4, a
25   life term, plus 25 years to life for the personal and intentional discharge of a firearm
     which caused great bodily injury finding, plus stayed sentences for the other
26   enhancements; with respect to Count 5, a consecutive life term, plus 20 years for the
     personal and intentional discharge of a firearm finding, plus a stayed sentence for the
27   other enhancement; and with respect to Count 2, a consecutive term of 8 months.

28        [4]    On August 14, 2006, the trial court resentenced petitioner on Count 2 to a
     consecutive prison term of 2 years. (See Lodgment No. 7).

# III. FACTUAL BACKGROUND

Since petitioner is not challenging the sufficiency of the evidence to support his convictions, the following is taken from the "Factual and Procedural Background" section of the California Court of Appeal opinion:

### a. *The People's evidence*

On August 7, 2003 Sheldon Terry was driving his truck on Paloma Avenue in Los Angeles on his way to work; his nephew Faron Witherow was a passenger in the truck.[5] Shortly after Terry had turned on Paloma Avenue, Witherow said to him, "Watch out, that's Tiny T-Bone." Terry then saw Tiny T-Bone, who was identified at trial as [petitioner], running out of a yard toward the passenger side of the truck while carrying a gun. Upon seeing [petitioner], Terry grabbed Witherow, pushed his head down and accelerated. Terry heard [petitioner] fire about seven shots as he ran toward the truck. Terry's truck was hit four times. Terry was hit twice: One bullet hit him in the left wrist; a second bullet grazed his right knee. Witherow was not hit. Terry knew [petitioner] because he had grown up with [petitioner's] father; Witherow knew [petitioner] because the two had attended school together. Witherow corroborated Terry's account of the shooting incident but denied he had seen the shooter or had been acquainted with [petitioner].

Terry drove to the home of Dennis Terry, his father and Witherow's grandfather. Terry and Witherow each told Dennis Terry that Tiny T-Bone had shot at them and had hit Terry. Dennis Terry took Terry to the hospital. The doctors treated Terry's wrist injury but were unable to remove the bullet

---

[5]     Terry was murdered shortly before the first trial. The transcript of his preliminary hearing testimony was read to the jury, which was instructed that he was unavailable.

4

from his wrist.  As of the time of the preliminary hearing, Terry still experienced pain and could not completely close his left hand.  The police interviewed Terry at the hospital, who told them Tiny T-Bone had fired shots at him and Witherow and he had been hit twice.

The following afternoon, August 8, 2003, in response to the information provided by Terry, Los Angeles Police Department Officer Gerardo Vejar attempted to locate [petitioner], whom he knew to be a gang member using the street name Tiny T-Bone.  Officer Vejar found [petitioner] standing in the driveway of a house in territory claimed by his gang and saw a handgun in his waistband. [Petitioner] initially attempted to hide behind a van and then began to run toward the yard of the house, but ultimately complied when Officer Vejar told him to stop. [Petitioner] was taken into custody.  Officer Vejar recovered a loaded gun from the bumper of the van in the driveway.[6]

Los Angeles Police Department Detective Donovan Nickerson testified as an expert on the Front Street Watts Crips gang, of which [petitioner] was a member.  According to Detective Nickerson, in the late 1990's a conflict occurred within the gang.  Led by Witherow's brother, Dennis Evans, a number of gang members split off and formed a faction known as the Mob.  The split started a gang war, which led to a number of murders, including that of Evans on May 18, 2000 and another of Witherow's brothers, Devon Witherow, on August 22, 2002.  In addition, [petitioner], who remained a member of Front Street, had been shot in an incident on May 25, 2003; at least one suspect in that shooting was a Mob member.  Based on this information, and the fact Witherow and Terry were

[6]     Officer Vejar's encounter with [petitioner] on August 8, 2003, combined with [petitioner's] stipulation as to his status as a felon, formed the basis for [petitioner's] conviction at his first trial for possession of a firearm by a felon.

5

1    related to the founder of the Mob, Detective Nickerson concluded the

2    shooting in this case was gang-motivated.

3

4    ### b. *The defense's evidence*

5    Lakeisa Oglesby, at whose house [petitioner] was arrested, testified

6    [petitioner] was using crutches and moving slowly on the day he was

7    arrested because he had been shot several months earlier. According to

8    Oglesby, [petitioner] was sitting on the couch in the garage when the police

9    approached and could not have run, as Officer Vejar described, because of

10    his injury. [Petitioner's] mother and father both testified [petitioner] had

11    been shot on May 25, 2003 and said, since that time, he walked only with

12    crutches and could not run.

13    [Petitioner] testified on his own behalf. He admitted he was a Front

14    Street gang member but denied he was aware of any fighting within his

15    gang, stating he had not been an active member at the time of the instant

16    offenses. He also denied he had shot at Terry and Witherow. Indeed, he

17    denied he had ever shot at anyone and said he carried a gun for defensive

18    purposes only. According to [petitioner], he could not have been the

19    assailant in the attempted murders of Terry and Witherow because the injury

20    to his right leg, suffered as a result of being shot on May 25, 2003, left him

21    unable to run toward Terry's truck while shooting, as Terry indicated had

22    occurred. [Petitioner] admitted he had not testified truthfully in a prior

23    court proceeding, for example when he had denied his status as a gang

24    member and knowing Oglesby. [Petitioner] also admitted he had "done

25    some bad things" as part of his gang membership, but denied he had killed

26    Deangelo Anderson on May 18, 2000 or Victor Farr on January 4, 2002.

27    ### c. *The People's rebuttal evidence*

28    On rebuttal a doctor at Harbor UCLA Medical Center, where

6

[petitioner] had been treated after he was injured in the May 25, 2003 shooting, testified [petitioner's] medical records indicated he was ambulatory and had a steady gait when he came to his May 26, 2003 and June 5, 2003 appointments.

Detective Nickerson also testified in rebuttal. Contrary to [petitioner's] denial of any knowledge of disputes within the Front Street gang, Detective Nickerson testified [petitioner] had spoken to another officer about the internal feud in his gang. He also stated [petitioner] was suspected of committing the murders of Anderson and Farr, which formed part of the basis for his opinion the attempted murders of Terry and Witherow were gang-motivated. According to Detective Nickerson, Farr was trying to leave Front Street to become a Mob member when he was killed. [Petitioner] had been arrested for the Farr murder but then had been released; he was not prosecuted for the crime. [Petitioner] had never been arrested for the Anderson murder. (Lodgment No. 4 at 2-5).

## IV. PETITIONER'S CLAIMS

1. The trial court erred in admitting gang-related evidence. (First Amended Petition at 5; Memorandum at 6-7; Traverse at 6-11).[7]

2. The trial court erred in failing to give a complete limiting instruction on the gang-related evidence. (First Amended Petition at 5; Memorandum at 7-8; Traverse at 11-12).

3. The trial court erred in permitting the prosecution to cross-examine petitioner on two uncharged murders. (First Amended Petition at 6; Memorandum at 8-9; Traverse at 6-11).

---

[7]   Although petitioner phrased this claim in terms of error by the California Court of Appeal (see First Amended Petition at 5), the Court construes this claim as a challenge to the trial court's admission of gang-related evidence.

7

4.   The prosecutor committed misconduct during cross-examination of petitioner. (First Amended Petition at 6; Memorandum at 9-11; Traverse at 13-14).

5.   Petitioner received ineffective assistance based on his trial counsel's failure to object to the prosecutor's comments and question about the unavailability of a witness. (First Amended Petition at 6; Memorandum at 11-12; Traverse at 12-14).

## V. STANDARD OF REVIEW

The standard of review applicable to petitioner's claims herein is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."

Moreover, a state court factual determination must be presumed correct unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1)(as amended).

Under the AEDPA, the term "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71-72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003); see also Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("clearly established Federal law" consists of holdings, not dicta, of Supreme Court decisions "as of the time of the relevant state-court decision"). However, federal circuit law may still be persuasive authority in identifying

8

1  "clearly established" Supreme Court law or in deciding when a state court unreasonably

2  applied Supreme Court law.  See Tran v. Lindsey, 212 F.3d 1143, 1154 (9th Cir.), cert.

3  denied, 531 U.S. 944 (2000).

4        Although a particular state court decision may be both "contrary to" and "an

5  unreasonable application of" controlling Supreme Court law, the two phrases have

6  distinct meanings.  Williams, supra, 529 U.S. at 391, 413.  A state court decision is

7  "contrary to" clearly established federal law if the decision applies a rule that contradicts

8  the governing Supreme Court law or reaches a result that differs from a result the

9  Supreme Court reached on "materially indistinguishable" facts.  Early v. Packer, 537

10  U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam); Williams, supra, 529 U.S.

11  at 405-06.  However, the state court need not cite the controlling Supreme Court cases,

12  "so long as neither the reasoning nor the result of the state-court decision contradicts

13  them."  Early, supra.

14        A state court decision involves an "unreasonable application" of clearly

15  established federal law if "the state court identifies the correct governing legal principle

16  from [Supreme Court] decisions but unreasonably applies that principle to the facts of

17  the prisoner's case."  Williams, supra, 529 U.S. at 413; Woodford v. Visciotti, 537 U.S.

18  19, 24-27, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).  A federal habeas court

19  may not overrule a state court decision based on the federal court's independent

20  determination that the state court's application of governing law was incorrect, erroneous

21  or even "clear error."  Lockyer, supra, 538 U.S. at 75.  Rather, a decision may be rejected

22  only if the state court's application of Supreme Court law was "objectively

23  unreasonable."  Id.; Woodford, supra; Williams, supra.

24        When a state court decision is found to be contrary to or an unreasonable

25  application of clearly established Supreme Court law, a federal habeas court "must then

26  resolve the [constitutional] claim without the deference AEDPA otherwise requires."

27  Panetti v. Quarterman, 127 S.Ct. 2842, 2858, 166 L.Ed.2d 682 (2007); see also Williams,

28  supra, 529 U.S. at 406 (when a state court decision is contrary to controlling Supreme

1 Court law, a federal habeas court is "unconstrained by § 2254(d)(1)"). In other words, if

2 a § 2254(d)(1) error occurs, the constitutional claim raised must be considered *de novo*.

3 Frantz v. Hazey, __ F.3d __, 2008 WL 170323, *6-*8 (9th Cir. 2008); see also Rompilla

4 v. Beard, 545 U.S. 374, 390, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005).

5        The same standard of objective unreasonableness applies where the petitioner is

6 challenging the state court's factual findings under 28 U.S.C. § 2254(d)(2). See Buckley

7 v. Terhune, 397 F.3d 1149, 1154 (9th Cir. 2005); Bruce v. Terhune, 376 F.3d 950, 954

8 (9th Cir. 2004); Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir.), cert. denied, 125 S.Ct.

9 809 (2004); Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000). A federal court

10 first must undertake an "intrinsic review" of the state court's factfinding, which requires

11 an examination of the state court's factfinding process and not its findings. Buckley,

12 supra, 397 F.3d at 1154-55; Taylor, supra, 366 F.3d at 1000. "Intrinsic challenges to

13 state-court findings pursuant to the 'unreasonable determination' standard come in

14 several flavors, each presenting its own peculiar set of considerations." Taylor, supra,

15 366 F.3d at 1000-01 (listing, e.g.: "where the state court should have made a finding of

16 fact but neglected to do so[;] ... where the state court does make factual findings, but

17 does so under a misapprehension as to the correct legal standard[;] ... and, where the

18 fact-finding process itself is defective."). If the state court's factfinding process survives

19 the federal court's intrinsic review, or if the petitioner does not challenge the state

20 court's factfinding process, the state court's factual findings are presumed correct unless

21 rebutted by clear and convincing evidence. Buckley, supra, 397 F.3d at 1155.

22

23                           **V. DISCUSSION**

24 A.    **Habeas relief is not warranted on petitioner's claim concerning the trial**

25        **court's admission of gang evidence.**

26        Petitioner contends that the trial court deprived him of his state and federal

27 constitutional due process rights by erroneously admitting highly inflammatory gang

28 evidence. Specifically, petitioner contends that the trial court erred in admitting

evidence of petitioner's gang membership, evidence of the history of rivalry between the Front Street Crips ("FSC") gang and the Mob gang, and evidence of the shootings resulting from the ongoing rivalry. (First Amended Petition at 5; Memorandum at 6-7; Traverse at 6-11).[8]

### 1.   The record below

Prior to trial,[9] petitioner moved to exclude evidence of petitioner's membership in the FSC gang, the history of the rivalry between the FSC gang and the Mob gang, and the shootings arising out of the rivalry. Petitioner argued that the gang evidence was too prejudicial because there was no gang enhancement allegation. The prosecutor objected, explaining that the gang evidence was relevant to show that the shootings in the instant case were retaliatory actions taken by petitioner, stemming from the gang war between the FSC gang and the Mob gang. He explained that petitioner, who was a prime suspect in two unsolved murders, had been shot by a suspected Mob gang member. The prosecutor presented the theory that petitioner retaliated by shooting at Faron Witherow ("Wiherow") and Sheldon Terry ("Terry"), both of whom were related to two members of the Mob gang (those two Mob gang members had been killed as a result of the gang war). (See 4 RT 1324-1330, 1334-35,1340-41).

The trial court found that evidence about the generalities of the gang war, petitioner's gang membership, and petitioner having been a shooting victim in the gang war "clearly goes to motive," and ruled that the gang evidence was more probative than prejudicial. However, the trial court found that evidence of petitioner's involvement as a suspect in prior gang activities (i.e., two murders) and evidence of incidents that

---

[8]     To the extent that petitioner is contending that the admission of such evidence violated the California Constitution, petitioner's claim is not cognizable on federal habeas review. See 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); Smith v. Phillips, 455 U.S. 209, 221, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

[9]     Any reference to "trial" will pertain to the second trial unless otherwise indicated.

1  occurred after the instant shootings was more prejudicial than probative. (See 4 RT

2  1334, 1337-41).[10]

3        At trial, Los Angeles Police Department Detective Donovan Nickerson, the

4  prosecution's gang expert, testified as follows:

5        In the late 1990's there was a feud within the FSC gang which led to Dennis Evans

6  ("Evans"), Witherow's older brother, creating a new gang, the Mob gang.  As a result of

7  this break up, a war between the two factions ensued.  A number of shootings and

8  murders occurred between the two gangs dating back from March 1999.  Witherow's two

9  brothers, Evans and Devon Witherow, were murdered by suspected FSC gang members

10  on May 18, 2000 and August 22, 2002, respectively.  Petitioner was a victim of a

11  shooting on May 25, 2003, in which a Mob gang member named Ricko Reed was the

12  suspect.  Petitioner was a documented member of the FSC gang based on petitioner's

13  numerous admissions to various police officers.  (See 4 RT 1459-60, 1462-66, 1470-71,

14  1475).

15        Detective Nickerson testified that he believed the current shootings were gang-

16  motivated, based on his knowledge of the ongoing gang war and the individuals involved

17  in the instant crimes (i.e., that petitioner was the shooter and that the victims were related

18  to Evans).  (See 4 RT 1467-68).

19

20      2.      Legal authority

21        A federal court is limited in conducting habeas review to deciding whether a

22  conviction violates the Constitution, laws, or treaties of the United States.  See 28 U.S.C.

23  § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385

24  (1991).  A state court's evidentiary ruling is not cognizable on federal habeas review,

25

26        [10]      Petitioner also moved to bifurcate the trial with respect to the issue of
whether petitioner was actually a gang member.  Specifically, petitioner requested that
27  the trier of fact first determine the identity of the shooter, and if it concluded that the
shooter was petitioner, then the issue of whether petitioner was a gang member should be
28  addressed.  (See 4 RT 1325-27).  The trial court denied petitioner's motion to bifurcate.
(See 4 RT 1338-39).

1  unless the ruling infringes upon a specific federal constitutional or statutory provision or

2  deprives the defendant of a fundamentally fair trial as guaranteed by due process.  See

3  Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); Walters v.

4  Maass, 45 F.3d 1355, 1357 (9th Cir. 1995).  The failure to comply with state rules of

5  evidence is not a basis for granting federal habeas relief on due process grounds.  See

6  Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999), cert. denied, 528 U.S. 1198

7  (2000); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).  The issue is

8  whether the admission of evidence was so arbitrary or prejudicial that it rendered the trial

9  fundamentally unfair.  See Walters, supra, 45 F.3d at 1357; Jeffries v. Blodgett, 5 F.3d

10  1180, 1193 (9th Cir. 1993), cert. denied, 510 U.S. 1191 (1994).  "Only if there are no

11  permissible inferences the jury may draw from the evidence can its admission violate due

12  process.  Jammal, supra, 926 F.2d at 920; McKinney v. Rees, 993 F.2d 1378, 1384 (9th

13  Cir.), cert. denied, 510 U.S. 1020 (1993); see also Estelle v. McGuire, supra, 502 U.S. at

14  70 (where the challenged evidence is relevant to an issue in the case, its admission

15  cannot be said to have violated the defendant's due process rights).

16

17       3.    California Court of Appeal decision

18       In rejecting petitioner's claim challenging the trial court's admission of gang

19  evidence, the California Court of Appeal reasoned as follows:

20            "Contrary to [petitioner's] contention, the trial court's decision to

21       permit testimony regarding evidence of his gang affiliation and the

22       relationship between Terry and Witherow, the victims of the attempted

23       murders, and [petitioner's] rival gang members on the ground the evidence

24       was relevant to establish motive for the charged offenses was well within

25       the bounds of reason.[11]  This evidence gave context to a shooting that

26

27       [11]    The trial court ruled, "[A]s far as whether [petitioner] is a gang member, a
   general history of the rivalry is certainly evidence of motive and highly probative and

28                                                      (continued...)

13

otherwise would have appeared random.  Moreover, evidence regarding the history of Front Street and its culture helped explain [petitioner's] shooting at Terry and Witherow as retaliatory.  In addition, the fact that [petitioner] had been shot approximately three months before the instant offenses and that at least one of the suspects in that shooting was a Mob member gave further explanation as to why [petitioner] would want to shoot relatives of the founder of the Mob.  This simply is not a case in which the gang-related evidence had little evidentiary value yet great emotional impact.  (People v. Olguin, supra, 31 Cal.App.4th at p. 1369 [exclusion of evidence under Evid. Code, § 352 "designed for situations in which evidence of little evidentiary impact evokes an emotional bias"].)  Based on the strong link between the gang-related evidence and the shooting of Terry and Witherow, the evidence was highly relevant to the issue of motive and thus, as the trial court concluded, more probative than prejudicial."  (Lodgment No. 4 at 6-8).[12]

4.    Findings and conclusion

The Court concurs with the California Court of Appeal that the evidence in question was relevant to petitioner's motive for shooting the victims.  Accordingly, the admission of such evidence did not violate petitioner's federal constitutional rights to due process and to a fair trial.  See Estelle, supra; Jammal, supra; Windham v. Merkle,

---

[11] (...continued)
with the exclusion of the two things I've done [testimony that petitioner was a suspect in two unrelated murders and evidence of shootings that occurred after the instant offenses], I don't think it is more prejudicial than probative.  I think it is more probative than prejudicial."

[12]    Under Ylst v. Nunnemaker, 501 U.S. 797, 803-04, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), it may be presumed that the California Supreme Court, by its silent denial of petitioner's Petition for Review raising the same claims, did not intend to change the California Court of Appeal's reasoned decision rejecting them.

1    163 F.3d 1092, 1103-04 (9th Cir. 1998) (holding that evidence of gang involvement was

2    properly admitted to prove motive for participating in the alleged crimes).

3          The Court therefore finds and concludes that the California courts' rejection

4    of petitioner's claim based on the admission of the gang evidence neither was

5    contrary to nor involved an unreasonable application of clearly established federal

6    law, as determined by the United States Supreme Court.

7

8    **B.     Habeas relief is not warranted on petitioner's claim concerning the trial**

9          **court's admission of evidence concerning two uncharged murders.**

10         Petitioner contends that the trial court erred in permitting the prosecutor to cross-

11   examine petitioner on two uncharged murders which petitioner was suspected of

12   committing. (First Amended Petition at 6; Memorandum at 8-9; Traverse at 6-11).

13

14         1.     The record below

15         As discussed above, the trial court initially disallowed evidence that petitioner was

16   a suspect in two gang-related murders.

17         During the defense case, petitioner testified that he was an FSC gang member who

18   had prior convictions for gun possession (twice) and commercial burglary (see 5 RT

19   1576-78); that he was a victim of a shooting on May 25, 2003, which left him unable to

20   run (see 5 RT 1578-79, 1583); and that he was not armed with a firearm when he was

21   shot on May 25, 2003, and that he did not shoot Terry or Witherow on August 7, 2003

22   (see 5 RT 1591-94).

23         On cross-examination, petitioner testified that he had never shot at another person

24   (see 5 RT 1594-95); that he was unaware of any gang war between the FSC gang and the

25   Mob gang (see 5 RT 1597-99); and that, although he was an FSC gang member, he was

26   "not active" on the date of the August 7, 2003 shootings (see 5 RT 1600).

27         During re-direct examination, petitioner testified that he had "done some bad

28   things" as a gang member (see 5 RT 1623) and that he carried guns for defensive

15

1  purposes only and not with the intent to harm another person (see 5 RT 1625). Petitioner

2  again asserted that he was not armed with a gun on the day he was shot. (See 5 RT

3  1625).

4       On re-cross examination, petitioner testified that he did not do "a really bad thing"

5  to Deangelo Anderson on May 18, 2000 or to Victor Farr on January 4, 2002 and that he

6  had never used a gun for defensive purposes. (See 5 RT 1632).

7       At a sidebar conference, the prosecutor sought the trial court's permission to ask

8  petitioner questions regarding his involvement in the murders of Anderson and Farr.

9  Over petitioner's objection, the trial court ruled that the prosecutor could question

10  petitioner about the two murders for the purpose of impeaching petitioner's testimony

11  that he carried guns for defensive purposes only and that he had never shot at another

12  person. (See 5 RT 1634-36).

13      Thereafter, the prosecutor asked petitioner whether he was the person who killed

14  Anderson and Farr. Petitioner denied killing either person. (See 5 RT 1637).

15      During rebuttal, Detective Nickerson testified that petitioner was the prime suspect

16  in the murders of Deangelo Anderson and Victor Farr, and that those murders formed the

17  basis of his opinion that the motive for the shooting in this case was gang-related

18  retaliation. (See 5 RT 1669-71).

19

20       2.    California Court of Appeal decision

21  In rejecting petitioner's claim, the California Court of Appeal reasoned that:

22       "With respect to the cross-examination of [petitioner], the trial court

23       correctly determined questioning [petitioner] as to whether he had shot

24       Anderson and Farr was appropriate given his testimony that he had never

25       shot at anyone and carried a gun for defenses purposes only and that,

26       although he had "done some bad things" as a gang member, he was not an

27       active member of Front Street at the time of the attempted murders of Terry

28       and Witherow. Once [petitioner] elected to testify and to attempt to

16

1    minimize both his conduct as a gang member and his use of guns, he

2    subjected himself to a full inquiry into his past gang activity and his

3    assertion he had never shot at anyone. (*People v. Humiston* (1993) 20

4    Cal.App.4th 460, 479 ["If a defendant takes the stand and generally denies

5    the crime with which he is charged, the permissible scope of

6    cross-examination is 'very wide.' [Citation.]  When a defendant voluntarily

7    testifies, the prosecutor 'may fully amplify his testimony by inquiring into

8    the facts and circumstances surrounding his assertions, or by introducing

9    evidence through cross-examination which explains or refutes his

10   statements or the inferences which may necessarily be drawn from them.

11   [Citation.]'"], quoting *People v. Cooper* (1991) 53 Cal.3d 771, 822; see

12   *People v. Chavez* (2000) 84 Cal.App.4th 25, 28 ["''No witness[,] including

13   a defendant who elects to testify in his own behalf[,] is entitled to a false

14   aura of veracity''"].)"  (Lodgment No. 4 at 8-9).

15

16        3.    Findings and conclusion

17        The Court concurs with the California Court of Appeal that the trial court did not

18   err in permitting the prosecutor to question petitioner about the murders of Farr and

19   Anderson, based on petitioner's attempt to minimize his involvement in the FSC gang

20   and his use of guns.  Such evidence was relevant to show that petitioner would retaliate

21   in a deadly manner for harm inflicted on a FSC gang member, that he desired to kill

22   members of the Mob gang, and that he intended to kill Terry and Witherow.[13]  Thus, the

23   admission of such evidence was not so arbitrary or prejudicial that it rendered the trial

24   fundamentally unfair.  See Estelle, supra; Jammal, supra; see also see McKinney v. Rees,

25

26        [13]    During rebuttal testimony, Detective Nickerson opined that the Anderson
     murder was in retaliation for the murder of a fellow FSC gang member, Marvin Johnson,
27   and that Farr was murdered because he was a FSC gang member who tried to join the
     Mob gang.  (See 5 RT 1670-71).  Detective Nickerson testified that petitioner was a
28   prime suspect in both murders.  (See id.).

17

1  supra, 993 F.2d at 1384-85.

2      Moreover, petitioner has failed to show that the admission of evidence of

3  petitioner's involvement in uncharged murders violates clearly established United States

4  Supreme Court law.  The United States Supreme Court has specifically left open the

5  question of whether the admission of propensity evidence violates due process.  See

6  Estelle, supra, 502 U.S. at 75 n.5 ("[W]e express no opinion on whether a state law

7  would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to

8  show propensity to commit a charged crime"); see also Alberini v. McDaniel, 458 F.3d

9  860, 866-67 (9th Cir. 2006), cert. denied, 127 S.Ct. 1834 (2007).

10     Finally, even if the California Court of Appeal erred in finding that the trial court

11 did not err in admitting evidence of petitioner's involvement in uncharged acts of

12 murder, and even if the admission of such evidence amounted to a federal constitutional

13 violation as a matter of clearly established Supreme Court law, the Court finds that the

14 constitutional error did not have a "substantial and injurious effect or influence in

15 determining the jury's verdict."  See Brecht v. Abrahamson, 507 U.S. 619, 637-38, 113

16 S.Ct. 1710, 123 L.Ed.2d 353 (1993).  There was substantial evidence, beyond the

17 evidence of petitioner's involvement in the uncharged acts of murder, showing

18 petitioner's involvement in the attempted murders of Terry and Witherow.  (See 4 RT

19 1381-86, 1393-95, 1412-13, 1415-20, 1426-27, 1429-30, 1459-60, 1462-68, 1470-71,

20 1475).  Terry unequivocally identified petitioner as the person who shot him.  (See 4 RT

21 1383-86).  Dennis Terry, who saw both Terry and Witherow shortly after the shootings,

22 testified that Witherow identified petitioner as the shooter.  (See 4 RT 1415-18).

23     Moreover, petitioner's testimony that he did not commit the charged offenses was

24 seriously impeached with his admission that he lied under oath in prior court proceedings

25 about his gang membership, about the location of his interview with the police, and

26 about knowing Lakeisha Oglesby and Andre Melton.  (See 5 RT 1603-05, 1611-15,

27 1624).  Finally, petitioner specifically denied being involved in the murders of Anderson

28 and Farr.  (See 5 RT 1637).

1   Accordingly, the Court finds that the California courts' rejection of petitioner's

2   claim was neither contrary to, nor involved an unreasonable application of, clearly

3   established federal law, as determined by the United States Supreme Court.

4

5   **C.   Habeas relief is not warranted on petitioner's instructional error claim.**

6   1.   The record below

7   After the presentation of all evidence at trial (prior to closing statements), the trial

8   court asked whether the parties wanted the trial court to instruct the jury pursuant to

9   CALJIC No. 2.09 about the limited purpose of Detective Nickerson's rebuttal testimony

10   that petitioner was a suspect in two murders.  (Such evidence was admitted for the

11   limited purpose of showing a motive for the attempted murders in this case.)  After

12   discussing the matter with petitioner, petitioner's counsel requested the instruction.  (See

13   5 RT 1686-89).

14   The trial court instructed the jury with CALJIC No. 2.09 ("Evidence Limited as to

15   Purpose") as follows:

16   "Certain evidence was admitted for a limited purpose.  The rebuttal

17   testimony of Detective Nickerson about the murders of Deangelo Anderson

18   and Victor Farr was only admitted for the limited purpose as evidence of

19   motive on the alleged attempted murders on August 7, 2003.  It was not

20   admitted to show that the defendant is a person of bad character or was in

21   any way involved in those prior murders.  Do not consider this evidence for

22   any purpose except the limited purpose for which it was admitted."  (5 RT

23   1696-97; see CT 153).

24

25   Petitioner contends that the trial court erred in failing to give the jury a

26   limiting instruction regarding all of the gang-related evidence, in violation of

27   petitioner's constitutional rights to due process and a fair trial.  Petitioner claims

28   that the trial court's instruction lead the jury into believing it could consider the

19

1  rest of the gang-related evidence for an improper purpose.  (First Amended

2  Petition at 5; Memorandum at 7-8; Traverse at 11-12).

3

4      2.    Legal authority

5      A state trial court's instructional error does not alone raise a ground cognizable in

6  a federal habeas corpus proceeding.  See Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th

7  Cir. 1988).  In order to form the basis of a federal constitutional claim, the error must so

8  infect the trial that the resulting conviction violates due process.  See Estelle, supra, 502

9  U.S. at 72; Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973).

10  Where the alleged error is the failure to give an instruction, the burden on the petitioner

11  is "especially heavy" because "[a]n omission, or an incomplete instruction, is less likely

12  to be prejudicial than a misstatement of the law."  Henderson v. Kibbe, 431 U.S. 145,

13  155, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); see also Villafuerte v. Stewart, 111 F.3d 616,

14  624 (9th Cir. 1997), cert. denied, 522 U.S. 1079 (1998).

15

16      3.    California Court of Appeal decision

17      When petitioner raised his instructional error on direct appeal, the California Court

18  of Appeal rejected it, reasoning as follows:

19          "A trial court has no sua sponte duty to give a limiting instruction,

20      including one relating to the admission of gang-related evidence. *(People v.*

21      *Hernandez*, *supra*, 33 Cal.4th at p. 1051; *People v. Jones*, *supra*, 30 Cal.4th

22      at p. 1116; see Evid. Code, § 355 ["When evidence is admissible as to one

23      party or for one purpose and is inadmissible as to another party or for

24      another purpose, the court *upon request* shall restrict the evidence to its

25      proper scope and instruct the jury accordingly" (italics added)].)  A possible

26      exception to this rule exists only in "'an occasional extraordinary case in

27      which unprotested evidence . . . is a dominant part of the evidence against

28      the accused, and is both highly prejudicial and minimally relevant to any

20

1  legitimate purpose.' [Citation.]" (*Hernandez, supra,* 33 Cal.4th at pp.

2  1051-1052.)  This is not the occasional, extraordinary case: As previously

3  discussed, the gang-related evidence was highly relevant to the issue of

4  motive for the shooting.  The victims were related to the founding member

5  of the Mob, a split-off faction that was feuding with [petitioner's] Front

6  Street gang; and other Mob members were believed to have shot [petitioner]

7  approximately three months before the instant offenses.[14]

8       Even if a limiting instruction should have been given with respect to

9  all of the gang-related evidence, moreover, the trial court's failure to

10  instruct the jury in that regard was not prejudicial because it is not

11  reasonably probable [petitioner] would have obtained a more favorable

12  result had an instruction been given.  (*People v. Falsetta* (1999) 21 Cal.4th

13  903, 925 [applying *People v. Watson* (1956) 46 Cal.2d 818, 836, standard of

14  prejudice to trial court's failure to give limiting instruction].)  The

15  prosecution's theory of the case was that the gang-related evidence

16  established [petitioner's] motive for the attempted murders.  Indeed, the

17  prosecutor told the jury during closing argument Detective Nickerson's

18  testimony was to be considered only on the issue of motive and the jury was

19  the sole judge of his credibility.  No suggestion was made [that] the

20  evidence was admitted to prove [petitioner] had a criminal disposition and,

21

22      [14]    The fact the trial court gave a limiting instruction regarding Detective
Nickerson's rebuttal testimony did not create a sua sponte duty on the part of trial court

23  to give such an instruction regarding all gang-related evidence.  Defense counsel did not
request an all-inclusive limiting instruction and, in fact, equivocated before agreeing to

24  one specifically directed to Detective Nickerson's rebuttal testimony.  Because the
gang-related evidence was plainly relevant to the issue of motive for the shooting, its

25  admission for that purpose was obvious.  There was never any indication the
gang-related evidence should be considered for any other reason, such as to improperly

26  suggest petitioner was guilty of the attempted murders because he had a criminal
disposition.  Thus, there is no reason to conclude the jury might have deduced from the

27  trial court's instructions that the gang-related evidence apart from Detective Nickerson's
rebuttal testimony could be used for an improper purpose.  (See *People v. Freeman*

28  (1994) 8 Cal.4th 450, 495 [limiting instruction not necessarily beneficial to defense
when purpose of evidence obvious].)

1  therefore, was guilty of the attempted murders.  In addition, as explained,

2  Terry's testimony that [petitioner] was the shooter was strong and

3  unequivocal and corroborated by his father, who saw both Terry and

4  Witherow within minutes after the shooting. [Petitioner's] testimony, on the

5  other hand, was thoroughly impeached and included an admission he had

6  lied under oath in a prior court proceeding.  A limiting instruction regarding

7  all of the gang-related evidence simply would not have affected the outcome

8  of the trial. (*People v. Hernandez, supra*, 33 Cal.4th at p. 1054 [any failure

9  to give limiting instruction on gang-related evidence harmless when it

10  "would not have significantly aided defendants under these facts or

11  weakened the strength of the evidence of guilt the jury properly could have

12  considered"].)"  (Lodgment No. 4 at 11-13).

13

14      4.      Findings and conclusion

15      The Court concurs with the California Court's reasoning and conclusion that the

16  trial court did not fail to give a limiting instruction as to all gang-related evidence.

17  Detective Nickerson's testimony during direct examination about petitioner's

18  membership in the FSC gang, the history of the rivalry between the FSC gang and the

19  Mob gang, and the various shootings resulting from the ongoing rivarly was relevant to

20  show why petitioner shot the two victims.  During closing argument, the prosecutor

21  emphasized that Detective Nickerson's testimony was only to be considered on the issue

22  of motive. (See 5 RT 1720).  As noted by the California Court of Appeal, there is no

23  reason to believe the jury would have improperly considered such evidence to show

24  petitioner's propensity to commit the instant crimes.  Consequently, the trial court's

25  failure to give a limiting instruction with respect to all gang-related evidence did not so

26  infect the trial as to make the resulting conviction a denial of due process.  See Estelle,

27  supra; Cupp, supra.

28      Moreover, the California Court of Appeal's application of harmless error analysis

22

1   was not contrary to clearly established federal law, as determined by the United States

2   Supreme Court.[15]  Thus, the sole determination for the Court is whether the California

3   Court of Appeal "applied harmless-error review in an 'objectively unreasonable'

4   manner."  See Mitchell v. Esparza, 540 U.S. 12, 18, 124 S.Ct. 7, 157 L.Ed.2d 263

5   (2003).  The Court finds that it did not.  As noted by the California Court of Appeal,

6   overwhelming evidence established that petitioner committed the attempted murders.

7   Moreover, as noted above, petitioner's testimony about his lack of involvement in the

8   attempted murders was seriously impeached.

9        Accordingly, the Court finds that the California courts' rejection of petitioner's

10  instructional error claim neither was neither contrary to nor involved an unreasonable

11  application of clearly established federal law, as determined by the United States

12  Supreme Court.

13

14  **D.**     **Habeas relief is not warranted on petitioner's prosecutorial misconduct**

15  **claim.**

16       Petitioner contends that the prosecutor committed misconduct in two respects: (1)

17  by asking "unduly disparaging and argumentative" questions during cross-examination

18  of petitioner; and (2) by impermissibly asking about the unavailability of a witness who

19  was killed prior to the first trial.  (First Amended Petition at 6; Memorandum at 9-11;

20  Traverse at 13-14).

21       Federal habeas review of prosecutorial misconduct claims is limited to the narrow

22  issue of whether the alleged misconduct violated due process.  Donnelly v.

23  DeChristoforo, 416 U.S. 637, 642, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); Thompson v.

24  Borg, 74 F.3d 1571, 1576 (9th Cir.), cert. denied, 519 U.S. 889 (1996).  Misconduct is

25  reviewed in light of the entire trial, and relief will be granted only if the misconduct by

26

27       [15]    See, e.g., California v. Roy, 519 U.S. 2, 5, 117 S.Ct. 337, 136 L.Ed.2d 266

28  (1996) (holding that instructional errors that are "trial errors" are subject to harmless error analysis).

1  itself infected the trial with unfairness. <u>Donnelly</u>, <u>supra</u>, 416 U.S. at 639-43; <u>see</u> <u>also</u>

2  <u>Darden v. Wainwright</u>, 477 U.S. 168, 183, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986);

3  <u>Drayden v. White</u>, 232 F.3d 704, 713 (9th Cir. 2000), <u>cert. denied</u>, 532 U.S. 984 (2001);

4  <u>Furman v. Wood</u>, 190 F.3d 1002, 1006 (9th Cir. 1999).

5            For the reasons discussed below, the Court finds that the California courts'

6  rejection of petitioner's prosecutorial misconduct claim neither was contrary to nor

7  involved an unreasonable application of clearly established federal law, as determined by

8  the United States Supreme Court.

9

10      1.    <u>The record below</u>

11           a.    <u>The prosecutor's allegedly improper questions during cross-</u>

12               <u>examination of petitioner</u>

13      During direct examination, petitioner testified he did not remember what he did on

14 August 7, 2003, the day of the shootings, because it was "just a regular day." (<u>See</u> 5 RT

15 1592). On cross-examination, the prosecutor asked, "Well, you might have shot at

16 [Witherow and Terry] because you said you didn't remember anything about August 7,

17 2003, right?" Petitioner responded, "I know for a fact I did not shoot at them." The

18 prosecutor then asked, "Okay. Are you able to keep clear the people that you have shot

19 at and the people you haven't shot at?" Petitioner objected, and the trial court sustained

20 the objection. (<u>See</u> 5 RT 1594).

21      The prosecutor subsequently asked petitioner whether had admitted to the police

22 that he was a FSC gang member. Petitioner denied ever making such a statement to the

23 police. The prosecutor then asked, "So if there are documented records of you admitting

24 that, all those are lies?" Petitioner responded, "I mean, police just automatically say that

25 when they stop you. Whatever neighborhood they stop you in, that's what neighborhood

26 you from [sic]. They automatically say that. That's just what they do." The prosecutor

27 then asked, "So every person that is stopped in your area is automatically considered a

28 Front Street Crip gang member?" Petitioner answered, "Yes. Most of them." The

1   prosecutor then commented, "So I guess I better not go get a speeding ticket over there,

2   huh?"  The trial court asked whether the prosecutor's comment was a question, and the

3   prosecutor subsequently withdrew the statement.  (See 5 RT 1600-02).

4          Thereafter, the prosecutor questioned petitioner about being arrested while on

5   probation.  After petitioner admitted to such an arrest, the prosecutor asked, "And you

6   just can't seem to stop playing with guns, can you?"  Petitioner's objection to the

7   question as argumentative was denied.  Petitioner replied, "That's not what it is.  That's

8   what I'm around.  I'm around a violent atmosphere."  (See 5 RT 1605-06).

9          The prosecutor also questioned petitioner about his prior offenses for possession

10  of a firearm.  When petitioner stated he had been arrested only twice for firearm

11  possession, the prosecutor commented, "Oh, don't start that.  Are you sure that's what

12  you want to testify to?"  Petitioner moved to strike the comment, which the trial court

13  granted.  (See 5 RT 1607).

14         After petitioner admitted to changing his testimony as to certain matters since his

15  first trial, the prosecutor asked whether petitioner testified honestly in his first trial.

16  Petitioner replied, "I just told you I didn't."  The prosecutor then stated, "That you what?

17  I can't hear you.  I'm sorry.  You said that you did what?  Did you testify truthfully last

18  time?"  Petitioner responded, "No, I guess not.  I don't know.  You're making it seem

19  like I didn't, so I guess not."  (See 5 RT 1611-13).

20

21                  b.      The prosecutor's comments and question about the unavailability of a

22                          witness

23         Prior to trial, the prosecutor informed the trial court that Terry had been murdered

24  about one week before the beginning of the first trial.[10]  The trial court ruled that the jury

25  was not to be told that Terry had been killed.  (See 4 RT 1341-43).

26         During trial, the prosecutor asked the trial court for permission to elicit evidence

27  _____

28         [10]     Terry testified at a preliminary hearing before the first trial.

25

that Terry had been murdered.  The trial court reiterated that such questioning was impermissible because it was inflammatory.  (See 4 RT 1399-02).

During opening statements, the prosecutor made the following statements:

"Detective Nickerson is going to explain to you about this war, about this feud, about the shooting, about the gang mentality and that will kind of put everything in perspective for you so you can kind of understand why someone that has known both Faron Witherow and Sheldon Terry would go and shoot at Faron Witherow and Sheldon Terry because sometimes it is hard to understand.  Why would they do it?  Hopefully this will give you a little bit of an understanding as to this gang mentality and what a green light is and what snitches are.

The reason why I mentioned "snitch" is the witness you are going to hear from – you are going to have Sheldon Terry's transcript.  We already explained that to you.  We can't explain to you why he is not available.  Somehow it might come up, but we will have to explain it to you after the fact so you are going to listen to his testimony. . . .

Sheldon Terry is very cooperative – or was very cooperative.  He laid out [petitioner] . . . . Faron Witherow right from the beginning is very uncooperative. . . . Detective Nickerson is going to explain to you how within the gang mentality they don't snitch on one another.  They don't rat one another out.  They will just go, take care of it themselves. . . .

There was a plan to go ahead and take care of it themselves until Sheldon Terry said no, I am done with this.  We are going to do it the right way.  We are going to tell the police what happened.  So I completely expect Faron Witherow to get up here and do the same thing.  I don't know anything.  I didn't see anything. . . ."  (4 RT 1374-76).

Later, during cross-examination of petitioner, the following colloquy took place:

26

1    "[PROSECUTOR]: You were talking about these rules that you guys live by,

2   correct?

3        [PETITIONER]: Yes.

4        [PROSECUTOR]: You're not allowed to be a snitch, are you?

5        [PETITIONER]: I mean, you can do whatever you want to do.

6        [PROSECUTOR]: Right.  But if you're a snitch, you are going to get killed, aren't

7   you?

8        [PETITIONER]: No, not necessarily.

9        [PROSECUTOR]: Not necessarily, but it is definitely something – you are

10   definitely going to have to watch out constantly, right?

11       [PETITIONER]: Just get beat up.

12       [PROSECUTOR]: So if you did, in fact, kill Deangelo Anderson, wouldn't it be –

13       [PETITIONER]: I didn't kill anybody.

14       [PROSECUTOR]: Let's just assume hypothetically you did.  It would be pretty

15   hard to get a witness actually up on the stand to testify against you, wouldn't it?

16       [COUNSEL]: I'm going to object to the question, your honor.

17       [THE COURT]: Sustained.

18       [PROSECUTOR]: You heard Faron Witherow's testimony up here, didn't you?

19       [PETITIONER]: Yes, I heard it.

20       [PROSECUTOR]: He didn't snitch against you, did he?

21       [PETITIONER]: What do you mean?

22       [PROSECUTOR]: He didn't say that you were the one that shot him, did he?

23       [PETITIONER]: I'm not the one who shot him.

24       [PROSECUTOR]: You heard Sheldon Terry's testimony, didn't you?

25       [PETITIONER]: Yes.

26       [PROSECUTOR]: Sheldon Terry said that you were the one that shot him, right?

27       [PROSECUTOR]: Made a mistake.

28       [PROSECUTOR]: Sheldon Terry –

27

1    [PETITIONER]: A mistake in identity.

2    [PROSECUTOR]: And Sheldon Terry is now unavailable?

3    [THE COURT]: Excuse me. I am going to strike the question. Ask another

4    question.

5    [PROSECUTOR]: I have nothing further." (5 RT 1637-38).

6    Thereafter, during closing arguments, the prosecutor said, "[Sheldon Terry] came

7    up here through the transcript and he identified the defendant. And again, don't

8    speculate why Sheldon is not here. We will tell you about that after the trial if you are

9    curious." (See 5 RT 1764).

10

11    2.    California Court of Appeal decision

12    The California Court of Appeal rejected petitioner's prosecutorial misconduct

13    claim, as follows:

14        "Petitioner contends the prosecutor engaged in misconduct while

15        cross-examining him by asking improper questions and making

16        inappropriate comments, which indicated a personal belief that [petitioner]

17        was not testifying truthfully and was guilty, and throughout the trial by

18        suggesting to the jury in violation of the trial court's order that Terry was

19        unavailable because he had been murdered as a result of his preliminary

20        hearing testimony against [petitioner] in this case.

21        At least with respect to his complaints about the prosecutor's alleged

22        suggestions to the jury as to the reasons for Terry's unavailability,

23        [petitioner] forfeited his claim of prosecutorial misconduct when he did not

24        object in the trial court.[11] *(People v. Samayoa* (1997) 15 Cal.4th 795, 841

25        ["As a general rule a defendant may not complain on appeal of prosecutorial

26

27    ───────────────────

      [11]    Failure to present a claim or objection in a timely fashion results in a

28    "forfeiture," rather than a "waiver," of the point. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2.)

28

1   misconduct unless in a timely fashion – and on the same ground – the

2   defendant made an assignment of misconduct and requested that the jury be

3   admonished to disregard the impropriety"].)  Moreover, even when trial

4   counsel objected to a question asked by the prosecutor in his

5   cross-examination of [petitioner], he often failed to ask the question be

6   stricken and never requested the jury be admonished.  (*Ibid.*)  Contrary to

7   [petitioner's] contention, the prosecutor's remarks and questions to

8   [petitioner] were not so inherently prejudicial that an admonition to the jury

9   could not have cured any harm.  (See *People v. Dennis* (1998) 17 Cal.4th

10  468, 521.)  Thus, [petitioner] did not properly preserve his challenge to the

11  judgment based on prosecutorial misconduct.

12      In addition, none of [petitioner's] allegations, either viewed

13  independently or together, constitutes a cognizable claim of prosecutorial

14  misconduct.  In cross-examining [petitioner] the prosecutor sought to clarify

15  [petitioner's] testimony and expose the discrepancies between [petitioner's]

16  present testimony and his testimony from a prior proceeding.  Moreover, it

17  was [petitioner] himself who first admitted on redirect examination that he

18  had "done some bad things" and who denied ever shooting at anyone.  By

19  choosing to testify in this manner, [petitioner] subjected himself to vigorous

20  cross-examination by the prosecutor.  (*People v. Humiston, supra,* 20

21  Cal.App.4th at p. 479 [permissible scope of cross-examination of defendant

22  "'very wide'" when defendant voluntarily testifies and denies crime with

23  which he is charged]; see *People v. Chavez, supra,* 84 Cal.App.4th at p. 28

24  [defendant who elects to testify not "'"entitled to a false aura of

25  veracity"'"].)  Further, with respect to Terry's unavailability, the prosecutor

26  did not insinuate the reason for the unavailability but rather contrasted

27  Terry's willingness to identify the shooter with Witherow's refusal to do so,

28  despite the testimony of his grandfather to the contrary.  Those remarks

29

were reasonably based on the testimony presented and constituted "fair comment on the evidence." (*People v. Hill* (1998) 17 Cal.4th 800, 820.)

In any event, even if arguably improper, the prosecutor's actions were not prejudicial because it is not reasonably probable [petitioner] would have obtained a more favorable verdict absent the alleged misconduct. (*People v. Gionis* (1995) 9 Cal.4th 1196, 1220 [applying *People v. Watson, supra*, 46 Cal.2d at p. 836, standard of prejudice to claim of prosecutorial misconduct]; see also *People v. Crew* (2003) 31 Cal.4th 822, 839-840.) The prosecutor's remarks were limited in nature and, contrary to [petitioner's] assertion, did not infect the entire trial. Moreover, the trial court properly sustained defense counsel's objections to several questions asked by the prosecutor of [petitioner] on cross-examination and, therefore, prevented [petitioner] from having to answer those questions. Regarding Terry's unavailability, the prosecutor himself in closing argument told the jury not to speculate as to why Terry did not appear.

The alleged misconduct also was not prejudicial given the trial court's charge to the jury. The trial court instructed the jury before closing argument, "Statements made by the attorneys during the trial are not evidence." Further, it specifically instructed the jury regarding the content of questions asked of witnesses, "Do not assume to be true any insinuation suggested by a question asked a witness. A question is not evidence and may be considered only as it helps you to understand the answer." Finally, the court told the jury not to speculate as to what the answer would have been to a question to which an objection had been sustained and to disregard any evidence that had been stricken by the court. It is presumed the jury followed those instructions. (*People v. Boyette* (2002) 29 Cal.4th 381, 436 [alleged prosecutorial misconduct not prejudicial when trial court properly instructed on the law because jury presumed to have followed

1    instructions]; *People v. Clair* (1992) 2 Cal.4th 629, 663, fn. 8 [jury

2    presumed to have treated "prosecutor's comments as words spoken by an

3    advocate in an attempt to persuade"].)"   (Lodgment No. 4 at 13-16).

4

5        3.    Findings and conclusion

6              a.    The prosecutor's allegedly "unduly disparaging and argumentative"

7                    questions to petitioner did not amount to misconduct.

8    Petitioner contends that five of the prosecutor's questions to petitioner during

9    cross-examination, as presented above, constituted misconduct.  (First Amended Petition

10   at 6; Memorandum at 9-10; Traverse at 13-14).

11       The Court is unable to disagree with the California Court of Appeal's conclusion

12   that the prosecutor's questions to petitioner did not amount to prosecutorial misconduct.

13   Based on petitioner's voluntary testimony that he had "done some bad things" as a gang

14   member, that he carried a gun for defensive purposes only and that he had never shot at

15   another person, the prosecutor did not act improperly in subjecting petitioner to vigorous

16   cross-examination.  Although the trial court sustained objections to two questions (i.e.,

17   "Are you able to keep clear the people that you have shot at and the people you haven't

18   shot at?"; "Oh, don't start that.  Are you sure that's what you want to testify to?"), and

19   the prosecutor withdrew one question (i.e., "So I guess I better not go get a speeding

20   ticket over there, huh?"), the prosecutor's questions, when viewed in context of the

21   entire trial, did not infect the trial with unfairness.

22       Moreover, the California Court of Appeal did not apply harmless error review in

23   an objectively unreasonable manner.  See Mitchell v. Esparza, supra.  As discussed

24   above,  overwhelming evidence of petitioner's guilt for the attempted murders was

25   presented at trial.  Moreover, as noted by the California Court of Appeal, the trial court

26   sustained petitioner's objections to any improper questions.  Further, as noted by the

27   California Court of Appeal, the trial court instructed the jury not to consider as evidence

28   any statements made by attorneys, not to guess the answer of a question to which an

31

1  objection was sustained, not to assume the truth of any insinuation suggestion by a

2  question, and to disregard any evidence stricken by the trial court.  (See 5 RT 1693; CT

3  81).

4

5          b.      Petitioner's claim concerning the prosecutor's comments and

6                  question about the unavailability of a witness is procedurally

7                  defaulted; alternatively, the prosecutor's comments and question

8                  about the unavailability of a witness did not amount to misconduct.

9          Petitioner contends that the prosecutor committed misconduct during his opening

10 statement, his questioning of petitioner, and his closing argument because the prosecutor

11 told the jury that he had information on the reason why Terry was unavailable and he

12 "glaringly insinuated" that Terry had been murdered for having testified against

13 petitioner.  (First Amended Petition at 6; Memorandum at 11; Traverse at 13-14; see also

14 Lodgment No. 5 at 22-24).

15         The Court concurs with the California Court of Appeal that the prosecutor did not

16 insinuate that Terry was unavailable as a witness because he had been murdered for

17 testifying against petitioner.  In his opening and closings, the prosecutor noted that Terry

18 was unavailable in order to explain why the jury was read the transcript of Terry's

19 testimony instead of hearing directly from Terry.  (See 4 RT 1375, 5 RT 1764).

20         Moreover, as noted by the California Court of Appeal, the prosecutor commented

21 about Terry's unavailability in order to distinguish between Terry's willingness to

22 identify petitioner as the shooter and Witherow's refusal to do so, despite the testimony

23 of Dennis Terry (Witherow's grandfather) to the contrary.  (See 5 RT 1637-38).  Thus, as

24 found by the California Court of Appeal, the prosecutor's arguments were reasonable

25 inferences from the evidence.  See e.g., Ceja v. Stewart, 97 F.3d 1246, 1253-54 (9th Cir.

26 1996), cert. denied, 522 U.S. 971 (1997); Duckett v. Godinez, 67 F.3d 734, 742 (9th Cir.

27 1995), cert. denied, 517 U.S. 1158 (1996).  Moreover, as noted by the California Court

28 of Appeal, the trial court immediately struck the question about Terry's availability, and

32

1  the prosecutor expressly told the jury it would not be provided a reason for Terry's

2  unavailability. (See 4 RT 1375; 5 RT 1764). Moreover, as noted by the California Court

3  of Appeal, the prosecutor's reference to Terry's unavailability was brief in nature.

4  Moreover, as noted by the California Court of Appeal, the trial court instructed the jury

5  that statements made by the attorneys are not evidence, not to guess what the answer to a

6  question might have been if an objection was sustained, not to assume the truth of any

7  insinuation suggestion by a question, and to disregard any evidence stricken by the trial

8  court. (See 5 RT 1693; CT 81). Thus, the prosecutor's comments and question about

9  Terry's unavailability did not infect the trial with unfairness.

10

11  **E.     Habeas relief is not warranted on petitioner's ineffective assistance of trial**

12  **counsel claim.**

13          Petitioner contends that his trial counsel was ineffective for failing to object to, to

14  request an admonishment for, and to request a mistrial for, the prosecutor's comments

15  and question about Terry's unavailability. (First Amended Petition at 6; Memorandum at

16  11-12; Traverse at 12-14).

17          In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674

18  (1984), the Supreme Court held that there are two components to an ineffective

19  assistance of counsel claim: "deficient performance" and "prejudice."

20          "Deficient performance" in this context means unreasonable representation falling

21  below professional norms prevailing at the time of trial. See id. at 688-89. To show

22  "deficient performance," petitioner must overcome a "strong presumption" that his

23  lawyer "rendered adequate assistance and made all significant decisions in the exercise

24  of reasonable professional judgment." See id. at 690. Further, petitioner "must identify

25  the acts or omissions of counsel that are alleged not to have been the result of reasonable

26  professional judgment." Id. The Court must then "determine whether, in light of all the

27  circumstances, the identified acts or omissions were outside the range of professionally

28  competent assistance." Id.

1    To meet his burden of showing the distinctive kind of "prejudice" required by

2    Strickland, petitioner must affirmatively "show that there is a reasonable probability that,

3    but for counsel's unprofessional errors, the result of the proceeding would have been

4    different. A reasonable probability is a probability sufficient to undermine confidence in

5    the outcome." Strickland, 466 U.S. at 694; see also Williams, 529 U.S. at 390-91.

6        When petitioner raised this claim on direct appeal, the California Court of Appeal

7    rejected it, reasoning as follows:

8            "Because we find the prosecutor's actions about which [petitioner]

9        complains did not prejudice his case, we necessarily reject his alternative

10       contention his trial counsel was ineffective for failing to object to and

11       request admonitions to the jury regarding the alleged misconduct. (People

12       v. Ledesma, supra, 43 Cal.3d at p. 217 [ineffective-assistance claim requires

13       not only a showing counsel's performance was deficient but also resulting

14       prejudice].) Indeed, "rarely will the failure to object establish incompetence

15       of counsel, because the decision whether to raise an objection is inherently

16       tactical. [Citation.]" (People v. Lewis (2001) 25 Cal.4th 610, 678.)"

17       (Lodgment No. 4 at 16 n.13).

18       Since, as discussed above, the prosecutor's comments and question about Terry's

19   unavailability were not improper, petitioner has failed to establish either "deficient

20   performance" or "prejudice." Moreover, based on the overwhelming evidence of

21   petitioner's guilt, as discussed above, the trial court's striking of the prosecutor's

22   question, as discussed above, and the trial court's admonishments to the jury, as

23   discussed above, petitioner has failed to show that but for his trial counsel's failure to

24   object to the prosecutor's comments and question about Terry's unavailability there is a

25   reasonable probability the result of the trial would have been different.

26       Accordingly, the Court finds that the California courts' rejection of petitioner's

27   ineffective assistance of trial counsel claim neither was contrary to nor involved an

28   unreasonable application of clearly established federal law, as determined by the United

34

1  States Supreme Court.

3  ## VI.  <u>RECOMMENDATION</u>

4  For the reasons discussed above, it is recommended that the court issue an Order:

5  (1) approving and accepting this Report and Recommendation; (2) directing that

6  Judgment be entered dismissing the action with prejudice.

7  DATED:  2/29/08

STEPHEN J. HILLMAN
United States Magistrate Judge

<u>NOTICE</u>
Reports and Recommendations are not appealable to the Court of Appeals, but may be
subject to the right of any party to file Objections as provided in the Local Rules
Governing the Duties of the Magistrate Judges and review by the District Judge whose
initials appear in the docket number.  No Notice of Appeal pursuant to the Federal Rules
of Appellate Procedure should be filed until entry of the Judgment of the District Court.